IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR HUGO SILVESTRE GARCIA, <br>     Plaintiff, | : <br> : <br> : |
| v. | :   Civil No. 5:21-cv-04062-JMG |
| S&F LOGISTICS, LLC, *et al.*, <br>     Defendants. | : <br> : <br> : |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                  May 15, 2024

  **I.**  **OVERVIEW**

  Following the Court's October 24, 2022, entry of default judgment against Defendants, damages are the only remaining issue in the case.[1] Defendants now seek to preclude expert testimony regarding past and future medical needs, and related exhibits, from the Court's damages assessment. For the reasons that follow, the Court denies Defendant's request.

  **II.**  **BACKGROUND**

  In the Complaint, which was removed to this Court in September 2021, Plaintiff Victor Hugo Silvestre Garcia alleged claims of negligence arising from a tractor trailer accident and now requests substantial damages to cover past and future medical expenses. Plaintiff named as Defendants John McCollum, S&F Logistics, LLC., and John Doe(s).[2] After Defendants McCollum

---

[1] As this matter proceeded to a bench damages hearing, the Court is the finder of fact regarding the amount of reasonable and necessary damages.

[2] Plaintiff alleged the two John Does are designations of fictitious persons and/or entities acting as both the shipper and the broker of the load Defendant McCollum hauled at the time of the collision. ECF No. 1-1 at ¶¶ 5, 6. Plaintiff never sought leave to amend his Complaint to name these defendants, and the time for him to do so has long passed

and S&F Logistics, LLC failed to comply with this Court's Order to supplement discovery responses and refused to appear for noticed depositions even after the Court ordered them to do so, this Court entered default judgment against Defendants as to liability on October 26, 2022. ECF Nos. 52-54. The matter then proceeded to a damages hearing.

A two-day damages hearing was held in February 2023. At that time, some testimony and exhibits remained in dispute. Counsel proceeded with their presentations of evidence, subsequently briefed the disputed exhibits, and the exhibits remained under the Court's consideration. ECF Nos. 97-98, 106-09, 111-12. The Court now resolves those evidentiary disputes.

### III. DISCUSSION

Dr. Willingham, who was qualified as a life care planner, testified to both the need and the appropriate costs associated with Plaintiff's past and future medical care. Defendants seek to exclude Dr. Willingham's testimony, and associated exhibits, either in totality or in part. Defendants' arguments include that the testimony must be excluded for failure to disclose a supplemental portion of his report, failure to establish causation, because he did not testify to a reasonable degree of medical certainty, Plaintiff did not establish the necessity of future medical care, Dr. Willingham is not qualified to testify to medical care in Mexico, and Plaintiff cannot recover outstanding medical bills without establishing he intends to pay them. For the following reasons, the Court disagrees.

**A. Exclusion of Dr. Willingham's Testimony based on Formula Review Nondisclosure**

Defendants contend Dr. Willingham's failure to produce a 23-page "formula review" document warrants the complete exclusion of his trial testimony. The Court disagrees.

An expert witness's report "must contain a complete statement of all opinions to be expressed and the data or other information considered by the witness in forming those opinions."

Fed. R. Civ. P. 26(a)(2)(B). This includes any exhibits that will be used to summarize or support those opinions. Fed. R. Civ. P. 26(a)(2)(B)(iii). An expert's testimony is "limited to the information contained in their expert reports." *nCube Corp. v. SeaChange Int'l., Inc.*, 809 F.Supp. 2d 337, 347 (D. Del. 2011) (second and third alternations in original). However, "[w]hen determining whether an expert's testimony is beyond the scope of the expert's written report, courts do not require 'verbatim consistency with the report, but … allow [] testimony which is consistent with the report and is a reasonable synthesis and/or elaboration of the opinions contained in the expert's report.'" *Id.* (*quoting Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F.Supp.2d 568, 581 (D. Del. 2008). In addition, courts should consider "whether the objecting party had notice of the subject matter of the testimony based on the contents of the report and elaborations made during any deposition testimony." *Id.* (citations omitted). If a party fails to provide information as required by the Rules, the party is not allowed to use that information as evidence, unless the failure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In deciding whether a failure is harmless, there are several helpful factors under Rule 37(c)(1):

> (1) prejudice or surprise to the party against whom evidence is offered; (2) ability of party to cure prejudice; (3) likelihood of disruption to trial; . . . (4) bad faith or willfulness involved in not complying with the disclosure rules [; and (5)] the importance of the evidence to the proffering party's case.

*Utica Mut. Ins. Co. v. Cincinnati Ins. Co.*, 362 F. Supp. 3d 265, 271 (E.D. Pa. 2019) (citation omitted); *see also McCann v. Miller*, 502 F. App'x 163, 172 (3d Cir. 2012) (pointing out factors used to determine whether district court abused discretion by excluding evidence due to proffering party's failure to comply with court order). A "[f]ailure to comply with Rule 26(a) is harmless 'if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced.'" *Pease v. Lycoming Engines*, Civ. A. No. 4:10-CV-00843, 2012 WL

162551, *8 (M.D. Pa. Jan. 19, 2012) (quoting *Klatch-Maynard v. Sugarloaf Twp.*, No. 3:06-CV-0845, 2011 WL 2006424, *2 (M.D. Pa. May 23, 2011)).

Prior to testifying, Dr. Willingham provided an expert report which contained his substantive opinions and the basis of those opinions. Expert Report, ECF No. 74- 2. This report included information such as Dr. Willingham's research and data sources, charts depicting his calculations of costs, sources for anticipated medications and medical equipment and supplies, and additional details of his review. *Id.* Yet, in his subsequent deposition, Dr. Willingham mentioned a formula review document that also formed the basis of his opinions but was excluded from his expert report. Willingham Dep., 59:22-25, 60:1-11. This document contained the exact same table as the one depicted in his expert report, but also contained further formulas relied upon to reach his final conclusions. *Id.* at 71:5-7. The supplemental report goes on to expand upon each category of the original report with more detail to explain it further. *Id.* 71:2-25, 72:1-23. Dr. Willingham described this document as a "three-dimensional perspective." *Id.* at 60:7. Plaintiff's counsel contends, without dispute, that they did not fail to disclose this document in bad faith, and they themselves did not previously read the report. *Id*. at 75:3-7; Pl.'s Post-Hr'g Br. at 5, ECF No. 98; Defs.' Br. in Supp. of Trial Objs. ("Defs.' Br.") at 4, ECF No. 97.

Defendants now claim that they were so prejudiced by this document's late reveal that Dr. Willingham's testimony should be excluded in its entirety. Defs.' Br. at 3-5, ECF No. 97. They assert that because Dr. Willingham had "access to critical background information" that they did not see until after his testimony had concluded, they had no opportunity to inquire or investigate the information. *Id.* at 4.

However, Dr. Willingham did provide his ultimate opinions in his report. While it would have been preferable if the expert report included this document, it was merely an elaboration on

the report which was previously turned over. *See* Willingham Dep. at 71:17-25 (explaining the formula review table merely shows further formula and detail); 72:9-10 (stating "it goes into extreme detail on every particular line item []") Therefore, Defendants had notice of the subject matter of Dr. Willingham's testimony based on the contents his original report, and the testimony regarding the formula review was not outside of the scope of his disclosed opinions.

Additionally, even if this document falls under Rule 26(a)(2)(B) and Plaintiff was required to disclose it, Plaintiff's failure to do so was harmless. While Defendants assert they were prejudiced because they "had no opportunity to prepare questions based on this information, to question Dr. Willingham concerning the data during his trial testimony, or to otherwise investigate the matter," they do not specify what information in the report would have led to further questioning or investigation. Defs.' Br. at 4, ECF No. 97. Further, Defendants failed to take available and adequate steps to cure this prejudice. Defendants had the opportunity to cross-examine Dr. Willingham on the basis of his report, recall him as a witness, or ask this Court for an extension of time or reopening of discovery for further investigation. *See* Willingham Dep. at 75:12-16 ("I don't know if we'd have time to redo this next week or even if the judge would allow a late supplement at this point given how much time and expense and the fact that this is supposed to start next Tuesday or Wednesday"). This testimony was taken via Zoom outside of a court proceeding. Therefore, the burden of enacting these remedial measures would have hardly disrupted the damages hearing conducted a few days later. Instead, Defendants now ask for the extreme remedy of complete exclusion of Dr. Willingham's testimony. Such an extreme remedy is unsupported by the facts and the law. Since this testimony forms the basis of Plaintiff's damages analysis, Defendants had notice of Dr. Willingham's underlying opinions, and both parties agree there was no bad faith, the Court declines to exclude the entirety of Dr. Willingham's testimony.

### B.  Exclusion of Testimony on Prior Medical Expenses and Resulting Charts and Tables

Absent exclusion in the entirety, Defendants request that portions of Dr. Willingham's testimony be excluded for failing to establish a causal link between Plaintiff's injuries and the accident. Specifically, they seek to exclude testimony on prior medical expenses, and any charts or tables resulting therein, based on Plaintiff's failure to introduce evidence from an expert medical doctor linking Plaintiff's disc protrusion to the pertinent car accident. Plaintiff contends there are sufficient facts on causation such that testimony from a medical expert is unnecessary, and even if it were, Dr. Willingham himself qualifies. Both arguments are flawed because neither acknowledges- or perhaps is aware- of the elephant in the room: the Court's entry of default judgment on October 24, 2022, alleviated Plaintiff's burden of establishing causation.

#### 1.  Default Judgment

In October 2022, this Court entered default judgment against Defendants after granting Plaintiff's Motion for Sanctions. *See* Mem. Op. Granting Sanctions, ECF No. 52. As this Court's order granting sanctions stated, trial courts possess wide discretion when fashioning sanctions, including prohibiting a party from opposing designated defenses. *Id.* at 5-6 (citing FED. R. CIV. P. 37(b)(A)(i)-(vii). *See also Wolfson-Verrichia Group v. Metro Commer. Real Estate*, No. 508-cv-4997, 2012 U.S. Dist. LEXIS 203807 at *13 (E.D. Pa. Jan. 9, 2012)).

Despite this discretion, the Court recognized the extraordinary nature of default judgments and rarity of its use. Courts "do not favor entry of defaults or default judgment" and prefer decisions on the merits. *United States v. Mulvenna*, 367 F. App'x 348, 350 (3d Cir. 2010) (citation omitted); *Harad v. Aetna Cas. and Sur. Co.*, 839 F.2d 979, 981 (3d Cir. 1988) ("[T]his Court has adopted a policy disfavoring default judgments and encouraging decisions on the merits. The extreme nature of default judgment has been consistently emphasized in this circuit."). "Because

6

entry of a default judgment is an extreme sanction, the entry of such a judgment is generally disfavored." *Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 137 (3d Cir. 2017) (internal quotation marks and citation omitted). The Third Circuit requires its trial courts to apply the *Poulis* factors to guard against hasty default judgments. *See, Poulis*, 747 F.2d at 868. The caution shared by the courts is well-founded. A default judgment directing that certain facts are established or prohibiting the disobedient party from supporting or opposing designated claims or defenses should be a last resort in our adversarial system. Default judgments are severe, and therefore, should be rare. In this case, after analyzing the *Poulis* factors, the Court found this sanction appropriate. *See*, Mem. Op., ECF No. 52. Before doing so, it gave Defendants multiple opportunities to avoid default.

### 2.      Opportunities to Avoid Default

Defendants had several opportunities to participate in this case and avoid default. However, they continuously refused to participate in discovery. Plaintiff noticed the depositions of Defendant McCollum and a Rule 30(b)(6) corporate representative for Defendant S&F Logistics for March 21, 2022. Pl.'s Motion for Discovery Sanctions at 1, ECF No. 46. Neither Defendant McCollum nor Defendant S&F Logistics' corporate representative attended their respective noticed deposition. *Id.* In early June 2022, Plaintiff moved to compel these depositions and also moved to compel discovery responses from Defendants McCollum and S&F Logistics. ECF Nos. 32-34. This included interrogatory responses and production responses and requests. *Id.* On June 22, 2022, this Court entered an Order which (1) granted Plaintiff's Motions to Compel Depositions and Discovery Responses. (2) ordered Defendant McCollum and a corporate representative from Defendant S&F Logistics to be deposed within 21 days, and (3) ordered Defendants to supplement

their responses to Plaintiff's requests for production of documents and interrogatories within 21 days. ECF No. 41.

Defendants then proceeded to violate this Order by failing to provide additional responses to Plaintiff's discovery requests and failing to appear for their depositions, which resulted in Plaintiff filing a Motion for Discovery Sanctions. *See* ECF No. 46. In response to this Motion, defense counsel acknowledged they had "difficulties establishing and maintaining communication with both [Defendants] McCollum and a representative on behalf of S&F" since early March 2022. Defs.' Opp'n to Pl.'s Mot. For Discovery Sanctions ("Defs.' Sanctions Opp'n") at ¶ 13 ECF No. 48.

Finally, after seven months of disobeyed orders, the Court granted Plaintiff's Motion for Sanctions and entered default judgement on liability against Defendants. *See*, ECF Nos. 52-54. Although requested, the Court declined to impose an alternative, lesser sanction. Defendants requested this Court merely preclude Defendants from contesting negligence liability instead of entering default. *See* Defs.' Sanctions Opp'n at ¶ 26, ECF No. 48. The Court rejected this request and found there was adequate foundation to enter default judgment on liability. Mem. Op. at 11, ECF No. 52. The Court specifically declined to limit default to *negligence* liability, and instead entered a standard default judgment. The Court further described the consequence of this sanction and stated, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Id.* at 11 n.6 (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2688 (2d ed. 1983)).[3]

---

[3] Notably, Defendants never moved for this Court to set aside the default judgment, which could have been done upon a showing of good cause. Fed. R. Civ. P. 55(c). Setting aside a default judgment is within the discretion of the trial court, and the consideration of the applicable factors

8

Default judgments—though severe—are entirely avoidable. It is a rare remedy reserved for rare conduct and may be avoided by conduct short of wholesale refusal to participate in the lawsuit. There are real costs to conduct deserving of default judgment. When defendants refuse to participate in litigation, they delay the resolution of their case. During this delay, a plaintiff's costs (like medical expenses) may be left unpaid and accruing interest. Many plaintiffs are left without recourse and their opportunity to gather evidence to build their case is hindered. Not to mention the legal costs imposed on plaintiffs as they are forced to engage in motion practice in an effort to compel a defendant's participation. *See Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) ("Prejudice . . . includes deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." (citation omitted)). The costs of conduct deserving of default judgment is felt beyond the parties' case, too. When defendants refuse to participate in discovery, they singlehandedly halt the court's ability to maintain its ever-growing docket and efficiently ensure justice is served. By interfering with courts' docket management, derelict defendants impede the steady resolution of other cases even when counsel in those cases are diligently litigating.

### 3. Factual Allegations Accepted as True

Plaintiff alleged that "as a result of the crash [he] suffered permanent injuries [including] … [d]isc herniations in the cervical spine with radiculopathy ultimately requiring a cervical fusion surgery; . . . [d]isc herniations in the lumbar spine; . . . [d]isc protrusions in the thoracic spine; [and] [b]ilateral intrascapular pain." Complaint at ¶ 43, ECF No 1-1. This is a factual allegation that Defendants are precluded from disputing at this stage in the proceeding. It is therefore

---

is applied liberally. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) (discussing standard applicable to setting aside default judgment).

immaterial whether an obvious causal relationship between the injuries and the accident exist or whether Dr. Willingham was qualified to testify to causation, as causation was already established through default judgment.[4]

---

[4] The Court recognizes the somewhat novel issue regarding whether a plaintiff who obtains a default judgment still has the burden of proving that the defendant's negligence caused their injuries. The parties have not presented the Court with any cases on this point, and the Court itself has not found any binding cases addressing the issue. However, the Court is aware of a non-precedential decision, in the Superior Court of Pennsylvania adopting the viewpoint that the causal nexus between the conduct of the defendant and the event sued upon is admitted by default, not the causal connection between the event and the alleged damages. *Knudsen v. Brownstein*, No. 2260 EDA 2018, 2019 WL 4273894, *7 (Pa. Super. Ct. Sept. 9, 2019) (citing *Morgan v. Compugraphic Corp.*, 675 S.W.2d 728, 731-32 (Tex. 1984)).

In so holding, the Superior Court relied upon its interpretation of the Second Circuit Court of Appeals' holding in *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 70 (2d Cir. 1971), *rev'd on other grounds sub. nom.*, *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973). See *id.* In that case, the Second Circuit stated, "it was incumbent upon [the plaintiff] to introduce evidence showing the extent of damages **which resulted from** the…violations established by the default judgment." *Id.* (alternation in original). Despite this holding, the Second Circuit has also held "where it is properly alleged in a complaint, proximate cause—going to liability—is completely and irrefutably established upon the defendant's default." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992) (citations omitted). This second holding seem to suggest that while the compensation sought must reasonably relate to the damages that "naturally flow from the injuries pleaded," liability may already be established. *Id.*

Here, the Court focuses on the specific sanction Order in this case, which stated that liability was deemed established. Therefore, it is unnecessary for the Court to decide whether a plaintiff who obtains a default judgment typically carries the burden of establishing causation. However, the Court notes that cases such as this one are typically focused upon the causal connection to the alleged injuries. So, it is rare that a substantial dispute would exist over whether a defendant was negligent, or whether their actions caused the pertinent accident. If the Court were to find that plaintiffs still carry the burden of establishing causation, default judgments would lose their extraordinariness. Defendants would be capable of stalling the administration of justice with no real threat of adequate recourse.

### C. Exclusion of Testimony for Failure to Testify to a Reasonable Degree of Medical Certainty

Defendants next claim the Court should preclude Dr. Willingham's testimony in its entirety due to his failure to offer his opinions within a reasonable degree of medical certainty. The Court disagrees, as this is only a requirement when the witness is testifying to causation.

"Pennsylvania requires experts to testify that defendant's actions caused plaintiff's [injury] with a reasonable degree of medical certainty." *In Re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 750 (3d Cir. 1994) (citation omitted). While experts do not need to use this specific language, their opinion, in its entirety, must express "reasonable certainty that the accident was a substantial factor in bringing about that injury." *Id.* However, under Federal Rule of Evidence 702, the Rule governing expert testimony in federal court, a proponent of expert testimony must merely demonstrate to the court that it is more likely than not that the expert's experience will assist the trier of fact. *See* Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that … the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."). "This is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidentiary rules." *Id.* (advisory committee's notes to 2023 amendments).

Here, Dr. Willingham stated that his testimony was based upon a "more likely than not" standard. Willingham Dep. at 77:8-23. He also stated that "it could be 60 percent, 85 percent, but it has to be above [50]" and that it is a "smidgin better than a coin flip." *Id.* at 76:21-77:1. 77:6-7. While this testimony does not meet the reasonable degree of medical certainty standard, Dr. Willingham explicitly stated he was testifying to a more likely than not standard. Therefore, his

11

testimony qualifies under Rule 702. The certainty of his opinions goes to the weight of the evidence, not the admissibility.

> D. **Exclusion of Testimony on Future Medical Expenses and Resulting Charts and Tables**

Defendants next contend that this Court should preclude Dr. Willingham's testimony on future medical expenses, and any charts and tables resulting therein, based on Plaintiff's failure to introduce evidence from an expert medical doctor opining on the need for future medical care. Defendants take issue not with the testimony itself, but instead who delivered it. They argue that such testimony must come from a medical doctor as opposed to a life care planner, such as Dr. Willingham. For multiple reasons, the Court disagrees.

Dr. Willingham has been board-certified in physical medicine and rehabilitation since 1986. Willingham Dep. 8:10-13. He has extensive experience in the medical field both in practice and in academia. *Id.* at 6:23-25, 7:1-25, 8:25, 9:1-13. He has treated patients with back and spine injuries and has treated hundreds of patients for their rehabilitation needs. *Id.* at 7:5-18.

Rule 702 provides, in pertinent part, that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not" that their experience will assist the trier of fact, is based on sufficient facts or data, is the product of reliable principles and methods, and the opinion reflects a reliable application of the principles and methods to the facts. Fed. R. Evid. 702. Courts liberally assess the specialized expertise requirement—the need for the expert to testify on a matter requiring scientific, technical, or specialized knowledge— so that "a broad range of knowledge, skills, and training" will be sufficient to qualify an expert. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (quoting *In Re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 74. "[A]n expert's testimony is not limited

12

to the area in which he or she . . . specialize[s, but] the party offering the expert must demonstrate that the expert has the necessary expertise to provide reliable evidence." *Ferris v. Pa. Fed'n Bhd. of Maint. of Way Emps.*, 153 F.Supp. 2d 736, 743 (E.D. Pa. 2001). A court will not exclude expert testimony simply because it does not deem the expert best qualified to opine on certain information. *Leah v. Salem*, Civ. A. No. 10-3933, 2011 WL 13263541, at *6 (E.D. Pa. Feb. 4, 2011) (citing *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996)).

When establishing damages for future medical expenses, a movant must prove by expert testimony both that future medical expenses will be incurred and the reasonable estimated cost of such services. *Povrzenich v. Ripepi*, 257 A.3d 61, 69 (Pa. Super. Ct. 2021). While an expert is "not required to predict the exact result anticipated . . . more than a mere possibility or fear of future consequences must be shown." *Repa v. Napierkowski*, No. 1:19-CV-00101, 2022 WL 1322529, *2 (W.D. Pa. May 3, 2022) (quoting *Fretts v. Pavetti*, 422 A.2d 881, 885 (Pa. Super. Ct. 1980)). "Generally, physicians will provide the foundational testimony for the future medical care and treatment that will be necessary." *Povrzenich*, 257 A.3d at 69. Then, a life care planner will "research the price of various procedures, treatments, and medications" likely to be needed in the future. *Id.*

Defendants take issue with Dr. Willingham's testimony about his assessment of Plaintiff's need for future medical care along with his projection of how much this care will cost. However, Defendants cite no controlling law that says that a life care planner, who is also a licensed physician, cannot testify to both. Additionally, the expert in *Povrzenich*, which Defendants use to support their contention, *see* Defs.' Br. at 9, was not a licensed physician. This distinguishes Dr. Willingham and weighs in favor of his ability to testify to both need and cost. While the Court has not found Third Circuit precedent on this issue, both the First Circuit and courts within the Fifth

13

Circuit have concluded that life care planners are not required to review their assessment of future medical needs with a physician. *See Marcano Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 171 (1st Cir. 2005) (finding no abuse of discretion in allowing life care planning expert's testimony even when plan was not subject to review by physician); *Hegwood v. Ross Stores, Inc.*, No. 3:04-CV-2674, 2007 WL 9711993, *4 (N.D. Tex. Jan. 17, 2007) (permitting Dr. Willingham to testify and admit life care plan despite developing plan without consultation with treating physician). The Court finds that Defendants objections go to the weight, not the admissibility, of Dr. Willingham's testimony on future medical expenses.

While Dr. Willingham was not Plaintiff's treating doctor, he reviewed all of Plaintiff's medical records from after the accident, including the report of Dr. Dones-Vasquez who discussed the possibility of long-term adjacent level disc disease, and he interviewed Plaintiff about past and present symptoms. *Id.* at 83:19-22. Since legally the injuries described in those medical documents and the injuries Plaintiff discussed with Dr. Willingham are a result of the pertinent accident, the Court does not find it necessary for Dr. Willingham to be a treating physician to opine on what care Plaintiff will need as a result of his diagnoses and active complaints.[5]

Defendants also contend that Dr. Willingham never established that the discussed categories of medical expenses would be incurred in the future. They are mistaken. Dr. Willingham opined on the need and timing of future medical care and expenses. He went beyond mere speculation because he provided specific testimony regarding how he calculated Plaintiff's life expectancy and why he believed Plaintiff may need an additional surgery, physical therapy, diagnostics, interventional procedures, and further equipment and supplies. *Id.* at 38:17-25 (life

---

[5] To the extent Defendants argue Dr. Willingham's testimony should be precluded because he lacks qualifications as a medical doctor, the Court disagrees based on the knowledge, training, skill, and experience discussed *supra*.

expectancy); 43:10-19 (future medical care); 43:20-25, 44, 46:1-5 (need for surgery); 52:1-20 (need for physical therapy); 63:1-14 (diagnostics); 65:8-17 (interventional procedures); 66:9-25-67:1-12 (equipment). Here, Dr. Willingham confirmed that he determined Plaintiff would require the adjacent level surgery at some point in the future "in reasonable medical certainty." *Id.* at 47:7-10. He also concluded that the sum total of $512,868 is reasonably necessary in his opinion. *Id.* at 69:17-19. While there is dispute regarding whether Dr. Willingham was properly testifying to a reasonable degree of medical certainty, *see supra*, it is undisputed that he was at least testifying to more than a 50% standard. *Id.* at 76:21-77:7.

Lastly, the Court finds Defendants waived their right to object to Dr. Willingham's qualifications to establish the need for future medical costs. Dr. Willingham explained his qualification as being able to create a document which "outlines categories of care and items within each specific category that are considered medically necessary . . . to treat a condition after an accident." *Id.* at 5:8-11. When asked what the goal of the plan was, Dr. Willingham stated, "[t]o project those medically necessary goods, costs, supplies, services that are required based on that accident or based on the outcome of the accident. . ." *Id.* at 5:16-20. When asked by Plaintiff's counsel whether he was being qualified to testify about what care Plaintiff would need in the future, Dr. Willingham answered in the affirmative. *Id.* at 8:17-20.

During their voir dire, defense counsel asked Dr. Willingham a variety of questions regarding whether he was able to testify to causation, the cost of medical care in Mexico, orthopedics, or psychiatry. *Id.* at 12-15. Defense counsel never questioned Dr. Willingham regarding whether he was qualified to opine on the need for future medical care once causation is established. *See id.* At the end of voir dire, defense counsel stated "[W]e're willing to allow Dr. Willingham to testify as a life care plan expert for future costs." *Id.* at 15:20-22. However, implicit

in Dr. Willingham's prior testimony regarding his qualifications, was the fact that he was planning to testify to the need for the care.

While defense counsel repeatedly objected to Dr. Willingham testifying about causation or diagnosis, they failed to acknowledge that since these elements were established through default judgment, their objections were misguided.[6] This failure to so object constitutes a waiver of any objection to this aspect of Dr. Willingham's testimony.

### E. Exclusion of Testimony for Lack of "Fit"

Defendants assert that the Court should preclude Dr. Willingham's testimony about future medical expenses and treatment because the testimony is inaccurate regarding medical costs in Mexico and Plaintiff did not offer testimony that he solely intends to seek treatment in the United States. The Court disagrees.

An expert's testimony must be relevant and assist the trier of fact. *See*, Fed. R. Evid. 702. Defendants contend Dr. Willingham's testimony regarding future medical expenses is not relevant, because he did not obtain information or offer an opinion regarding medical services in Mexico. However, Plaintiff received prior medical treatment in the United States and was not obligated to testify that he would continue to do the same. Willingham Dep. at 91:1-2. It was reasonable for Dr. Willingham to base his opinion off the location the prior medical treatment was performed. *See Pratt v. Stein*, 444 A.2d 674, 697-98 (Pa. Super. Ct. 1982) (finding factfinder may consider cost of future services based upon data from past services and cost). Defendants assume without

---

[6] Even if the Court found these objections timely and Defendants properly framed them as outside the scope of Dr. Willingham's knowledge and expertise, they would still be overruled for the reasons discussed *supra.* The Court finds Dr. Willingham qualified to opine on future medical needs based on reports and Plaintiff's interview regarding symptoms and diagnoses resulting from the accident.

evidentiary support, that Plaintiff would seek further medical care in Mexico. Therefore, the Court declines to preclude Dr. Willingham's testimony for lack of fit.

### F.  Exclusion of Testimony Regarding Amounts Billed.

Defendants contend that the Court should preclude Dr. Willingham's testimony as to past medical expenses based upon Plaintiff's failure to establish that all outstanding bills will be paid in the future. In so contending, Defendants rely on their interpretation of *Moorhead v. Crozer Chester Medical. Center.*, 765 A.2d 786 (Pa. 2001), *abrogated on other grounds by Northbrook Life Ins. Co. v. Commonwealth*, 949 A.2d 333 (Pa. 2008). Defendants' reading of *Moorhead* is misplaced.

In *Moorhead*, a health care provider accepted a Medicare allowance payment as full satisfaction of the decedent's debt. *Id.* at 788. The question before the Pennsylvania Supreme Court was whether the plaintiff was entitled to recover the full value of medical services, or only the amount actually paid by Medicare and accepted by the provider. *Id.* at 789. The Court found that if the exact amount of damages has been decided, or payment has been made and accepted in full, the plaintiff's recovery is limited to that amount and there is no issue for the factfinder to determine. *Id.* However, when a plaintiff continues to make payments on past medical bills, or will continue to incur expenses for medical services, the factfinder may determine the amount of damages which will "compensate the plaintiff for those expenses that are reasonably necessary to be incurred." *Id.* at 790. The plaintiff would then be limited to recovering the amount paid for medical services, which satisfied any outstanding debt. *Id.*

Here, at the time Dr. Willingham created his life care plan, Plaintiff had paid $9,860.39 toward his billed medical expenses. He still had $171,084 outstanding. While he made partial payment to four providers, he still owed the entire payment to eight others. There is no evidence

17

that anyone has accepted Plaintiff's past payments as payment in full satisfaction of his debt, nor is there evidence that anyone other than Plaintiff is responsible for this debt. It was not Plaintiff's burden to explicitly state he will continue to make payments on his medical debt. *See Van Sant v. Choice Hotels Int', Inc.*, No. 1:17-CV-01552, 2019 WL 13207583, *7 (M.D. Pa. Nov. 18, 2019) ("[T]he court has not been provided with anything to indicate that [the plaintiff] is seeking to recover for expenses that have been written off."). Instead, it is for the factfinder to determine the amount of damages that will compensate Plaintiff for reasonable and necessary expenses.

## IV. CONCLUSION

The Court finds Dr. Willingham's testimony, and any charts and exhibits resulting therein, admissible. Plaintiff was not required to turnover Dr. Willingham's formula review sheet, and even if he was, the error was harmless. Causation has been established through the Court's entry of default judgment, and therefore, Dr. Willingham was not required to establish causation prior to testifying about his lifecare plan. Since he was not opining on causation, he was not required to testify to a reasonable degree of medical certainty. Additionally, he was qualified based on his knowledge, skill, experience, training, and education to testify to needed future medical care in the United States, and no evidence was presented that Plaintiff intends to seek care in another jurisdiction. Lastly, the Court may determine the amount of damages for reasonable and necessary medical expenses, including outstanding medical bills.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge
